IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ELVIS CARLOS AGUILON FUENTES,   )
             )
   Petitioner,      )
             )
  v.          )
             )  1:26-cv-167 (AJT-WEF)
PAMELA BONDI, *et al.*,    )
             )
   Respondents.    )

## **ORDER**

Before the Court is Petitioner Elvis Carlos Aguilon Fuentes's Second Motion to Enforce the Court's Order to Conduct a Bond Hearing, [Doc. No. 16], (the "Motion") in which Petitioner challenges the constitutional adequacy of the bond hearing he received pursuant to the Court's Order dated February 24, 2026, [Doc. No. 14]. Upon consideration of the Motion, the memoranda in opposition thereto, [Doc. No. 18], the audio recording of Petitioner's bond hearing and for the reasons stated herein, the Court concludes that Petitioner did not receive a constitutionally compliant bond hearing. Accordingly, the Motion is GRANTED and the Respondents are ordered to release Petitioner immediately.

The Petitioner's immigration history is summarized in the Court's prior Orders. *See* [Doc. Nos. 6, 14]. Of relevance to the present Motion, the Court previously determined that Petitioner's ongoing detention pursuant to 8 U.S.C. § 1225(b)(2) violates the INA and the Fifth Amendment of the Constitution and ordered that Respondents provide Petitioner with a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a). [Doc. No. 6]. Following the conclusion of that bond hearing, the Petitioner was denied bond as a flight risk, [Doc. No. 7]. He then moved this Court to enforce its prior order on the grounds that "Respondents failed to conduct the

constitutionally required" bond hearing in a manner that comported with due process. [Doc. No. 8]. After confirming its jurisdiction and reviewing the record, which included a recording of the bond hearing, the Court concluded that "Petitioner did not receive a constitutionally compliant bond hearing" and ordered Respondents "to either release Petitioner or conduct an individualized bond hearing consistent with [the Court's] Order." [Doc. No. 14]. In that Order, dated February 24, 2026, the Court identified specifically the reasons relied upon for the denial of bond that were constitutionally inadequate to provide a reasonable decision consistent with due process. *See* [Doc. No. 14] at 4–5.

Pending before the Court is Petitioner's Motion, in which he contends that although Respondents held a new bond hearing, they "merely replicated the exact same constitutionally deficient process, again denying bond based upon the same flawed considerations." [Doc. No. 16] at 1. In response, Respondents submit that the Immigration Judge properly weighed the *In re Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006) factors that the Court directed them to consider and appropriately "concluded that Petitioner had not established that there were any bond conditions that could be imposed to ensure his appearance and compliance with immigration court orders." [Doc. No. 18] at 6.

The Court has reviewed the recording of Petitioner's bond hearing, conducted on February 27, 2026 pursuant to this Court's Order, and concludes, as it did before, that Petitioner's renewed bond hearing does not comport with the Constitution's guarantee of due process. Under the *In re Guerra* factors, which the Fourth Circuit has recognized as a guidepost to ensuring noncitizens receive "substantial process" in bond hearings, an "Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations . . . *as long as the*

*decision is reasonable.*" *In re Guerra*, 24 I. & N. Dec. at 40 (emphasis added).[1] That a bond decision must be "reasonable" has a clear constitutional dimension, as the Constitution forbids the government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law," U.S. CONST. amend. V, and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Here, after hearing the evidence presented and after reciting the *In re Guerra* factors, the Immigration Judge again found that the Petitioner constituted a flight risk based on reasons that the Court had previously found inadequate. In that regard, the Immigration Judge again found a risk of flight associated with the unadjudicated merits of a Cancellation of Removal application, even though the merits of that yet to be filed application is beyond the scope of the bond hearing, and the pendency of that application would appear to discourage, not encourage, any thought of flight. And despite the Court's prior order's finding a flight risk is not supported by unauthorized employment, which "is inextricably related to the unlawful status that has caused his detention and request for a bond hearing in the first place," [Doc. No. 14] at 4–5, the Immigration Judge once again concluded that Petitioner's unlawful status and prior work without authorization supported his decision to deny bond but this time cited as an additional reason Petitioner's lack of a listed employer. Relatedly, the Immigration Judge again found a flight risk associated with the possibility

---

[1] Those factors include:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Miranda v. Garland*, 34 F.4th 338, 362 n.10 (4th Cir. 2022) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

that he had not filed tax returns or paid taxes, without any evidence concerning whether he would have owed any taxes or be required to file tax returns based on any income he earned.

In addition to the reasons previously relied on, the Immigration Judge found lacking other evidence under the *In re Guerra* factors. For example, as for proof of a fixed address, the Petitioner presented an identification card, a Maryland DMV-issued driver's license, and a utility bill that referenced his current address. Although there was no evidence that this is not Petitioner's fixed address or that he has any intention of moving, the Immigration Judge found that evidence insufficient because he had not provided a lease agreement for that address (without any evidence of whether such a lease existed). Ostensibly also insufficient in the eyes of the Immigration Judge were the numerous letters of support the Petitioner presented, including from his pastor Mario Milan, referencing his good character and involvement in the community, as well as a letter from an individual willing to be his sponsor, with annual income in excess of $100,000, who agreed to be responsible for the Petitioner and financially support the Petitioner and his family until he could obtain work authorization. As for family ties, the Petitioner represented that he lives with his U.S. citizen children and his partner, the mother of his children, but the Immigration Judge appears to have discounted any family ties because the Petitioner's partner and the mother of his children did not submit a letter in support of the Petitioner, and the Immigration Judge surmised that she is not a citizen and she may not even be living with the Petitioner. The Immigration Judge also referenced that when masked individuals, who turned out to be ICE agents, directed the Petitioner to stop his car for no apparent reason, he stopped his car but attempted to flee on foot; and that in a study referenced in a Fifth Circuit opinion, there were statistics that a large percentage of aliens once released do not appear for court proceedings.

In sum, the Immigration Judge simply recited the *In re Guerra* factors and then repeated

4

what this Court had found to be inadequate together with other equally inadequate reasons that reflected that the denial of bond was a predetermined outcome. The Court therefore concludes, as it did before, that the considerations upon which it was determined that Petitioner constitutes a flight risk were so lacking in probative value that the decision to deny bond violated the BIA's own directive that a bond decision be reasonable and failed to provide the Petitioner with constitutionally sufficient due process. Because the record establishes in this case that Respondents failed to comply with the Court's previous Order that they either release the Petitioner or provide a constitutionally compliant bond hearing, Petitioner's release is mandated.[2]

For the above reasons, it is hereby

**ORDERED** that the Motion is GRANTED; and that Petitioner be RELEASED immediately with all of his personal belongings; and within 24 hours of Petitioner's release, Respondents are to file a status report confirming Petitioner's release; and it is further

**ORDERED** that Petitioner must live at a fixed address he must provide to Respondents upon release; and it is further

**ORDERED** that Respondents, together with their officers, agents, servants, employees, attorneys, successors, and all persons acting in concert with them, be and are ENJOINED from rearresting or detaining Petitioner unless he has committed a new violation of any federal, state,

---

[2] In ordering Petitioner's release, the Court joins other courts around the country that have concluded that a habeas petitioner's release is required under similar circumstances. *See Chavez Ochoa et al. v. Mason et al.*, Case No. 2:26-cv-00130 (S.D.W. Va. Feb. 26, 2026), Dkt. No. 20 ("[T]he Court finds that release is the appropriate remedy both because it is the traditional remedy in a successful habeas action for unlawful detention and because the evidence presented in this and other cases establishes that the Government would be unlikely to hold a timely bond hearing under procedures that comport with due process."); *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (given that the government's repeated use of unlawful detention policies across the country, causing petitioners to "sit in jail waiting for a judicial decision," the court would order immediate release instead of causing additional delay through a bond hearing); *J.U. v. Maldonado*, No. 25-cv-4836, 2025 WL 2772765, at *10 (E.D.N.Y. Sept. 29, 2025) ("[A] bond hearing for a post-deprivation review is wholly inadequate to remedy that unlawful detention."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13-14 (W.D. Tex. Oct. 2, 2025) ("Without a legitimate interest in her detention, immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

or local law, or has failed to attend any properly noticed immigration or court hearing, or pursuant

to 8 U.S.C. § 1231(a)(2).

  The Clerk is directed to send copies of this Order to all counsel of record.


Alexandria, Virginia
March 20, 2026

                /s/
          Anthony J. Trenga
          Senior United States District Judge